Ms. Ashmore, you may proceed. All right, counsel. It looks like you're ready. Let's proceed with our next case, which is 23-1339 USSEC v. Mediatrix Capital. Ms. Ashmore, you may proceed. Thank you, and may it please the Court. My name is Tracy Ashmore, and I have the privilege of representing Michael and Maria Young, the appellants. This is an interlocutory appeal of the trial court's failure to reduce a $250 million asset freeze that was put in place to secure remedy is net gains. This is a sequel of a claim that you just keep coming back on, and I guess my first question for you, you seem to have bought into the jurisprudence from other circuits that in order for you to keep bringing an interlocutory appeal in this context, you've got to show some change in circumstance. Do you agree with that? Normally, yes. Here, what I would like you to consider is in our first appeal, this court, and you were on that court, said that you could have reached the merits, but that you elected not to reach the merits in part because you wanted further adversarial testing below. I've gone back and re-read that opinion, and I'm frankly baffled on how you get that out of that opinion. What we said is it was waived, they were all waived, and that we didn't reach the merits because they were waived. Right. So my question to you is, first of all, do we even have jurisdiction to hear this if there's been no change in circumstances from the prior two times you've been up here? I've only been up here once before. And so, yes, you do have jurisdiction under 1292A1. You have jurisdiction of any order refusing to modify an injunction. And my question to you is other circuits have recognized some limits to that language, even though it's written very broadly. Right. And in your briefing, you seem to endorse those limits and try to show that you can meet those limits, including that there's been some factual change in circumstances between last time you were up here and now. Okay. And first of all, do you agree that there are limits on the right to repeatedly file an interlocutory appeal from an order refusing to dissolve or modify an injunction? Certainly there are limits where the issues have been cited on the merits. I mean, the judicial efficiency principles and all of that would 100% make sense. I wanted to expand a little bit on our previous colloquy, because where I did get from your prior decision, you said you could have reached the merits, even though the issues were waived, but elected not to for further adversarial testing. I also want to point out that the January order, the January 2020, I believe, order that was the subject of the first appeal, was specifically denied without prejudice. And the words without prejudice have meaning. In connection with a case that's dismissed without prejudice, the clear meaning is that the motion can be refiled, or that the complaint can be  And so the trial court denied without prejudice. We appealed. You did not reach the merits, finding that the issues were waived. And we then raised the specific issues that you had found to be raised. How is the record in this appeal different from the record in the previous appeal? Was it related to indigency? The Youngs are indigent, and that has been the case from the prior appeal until now. One thing that's changed is the amount frozen exceeds the amount available for disgorgement. That's on the plus side. I'm kind of curious. The district court was charged with making an assessment of preserving assets for defrauded investors versus the ability of the Youngs to mount a defense to the SEC's claims. And it found that there was no evidence that any of the assets were untainted. Do you agree with that finding? Or are there assets out there that are untainted? I think I saw there was evidence of personal jewelry and some other smaller assets. Untainted isn't the word that I would choose. We are at the prejudgment stage, and there's been no determination of liability. But as far as are there assets that did not come from the results of the mediatrix business, they are de minimis. I will state that. What's changed is if there has to be a method to determining a prejudgment asset freeze, it would be the amount that the commission can recover through disgorgement. And there are more than enough frozen assets to satisfy the commission's disgorgement remedy, and they still can't get any of the money unfrozen for legal costs and fees. Well, before we leave this point, the SEC says in its brief, and I'm quoting, Youngs concede that the amount of their frozen assets, about $6 million, does not exceed the amount of estimated ill-gotten gains that they possess, $8 million. Is that correct? No, that's not correct at all. Right now the receiver is holding approximately $7.4 million of frozen assets from the Youngs. And the Youngs have always said that there is no evidence supporting the commission's $8 million estimate. If you look at your, this circuit most recently looked at the lieu disgorgement remedy in Comarco. Well, let me just add to that, because I quoted from the SEC's brief, but now let me quote from the district court, which said, again, quoting, there's still no dispute that the assets currently available will be insufficient to compensate the defrauded investors. And the Youngs have not shown that the assets are untainted by alleged underlying fraud. Is that clearly erroneous? Yes, it's clearly erroneous because we said in our brief that the Youngs did, that the commission was over-secured as to the Youngs. We do not know. Well, you may have said that, but to show it's clearly erroneous, don't you have to point to, is there something in the record that shows that? There's nothing in the record that supports the $8 million number from the commission. Nothing. What's in the record from the Youngs is approximately $7.3 million in frozen assets. And the method of determining disgorgement, whether pre-judgment or post-judgment, is de novo. It's an issue for de novo review. And so with no evidence in the record whatsoever supporting the $8 million number, Camargo was post-judgment, full record on disgorgement. And the commission's numbers were reduced by 20%. If you're going to take that as an example, then the Youngs are over-secured by approximately $1 million. Let me just back up a little bit. And you had a colloquy with Judge McHugh that related to jurisdiction. Relatedly, we have the district court denying the motion based on law of the case. And the question I have for you is what you would say should happen now in light of our recent decision in a case called Harris v. City Cycle Sales, which says that law of the case applies when an issue has been forfeited in district court and waived on appeal. Doesn't that undercut your law of the case argument? I'm not familiar with that decision. I'm not going to pretend that I am. It came out in August, but it does speak to your argument that forfeiture and waiver doesn't apply in law of the case. But that case, at least in that context, at least suggests maybe that's not correct. What I looked up was the Carrasco-Salazar decision. It's an older decision, and it talks about waiver being accomplished through intent and forfeiture being neglect. And I don't think it's fair to say that the Youngs have neglected the argument that the $250 million pre-judgment asset freeze should be reduced under lieu. When we raised that issue in our first appeal— Hold on a second. Are you challenging now the prior Tenth Circuit decision that determined that these issues were waived? No, I think that is the law of the case. Okay. And now you're saying lieu somehow gives you an opportunity to bring the same issues again? I am saying that this court did not decide whether or not the pre-judgment asset freeze should be reduced in light of lieu, and that the Youngs have constantly said the pre-judgment asset freeze should be reduced under lieu in every motion that we filed from before the January decision after. Well, first of all, lieu is not a subsequent decision, right? It's subsequent to the asset freeze. It's subsequent to the asset freeze, but it's not subsequent to your prior appeal, is it? No. Okay. So how is that a change in the law or a change in the facts when it was already available before the last time you were up here? It's not a change in the law. There hasn't been a change in the law since the last time I was up here.  But I don't think that, under the definitions of waiver or forfeiture, that it would be correct to leave in place a plainly erroneous $250 million asset freeze, given that we're all, as lawyers and judges, required to follow the law set forth by the United States Supreme Court and Congress in the NDAA. Well, isn't disgorgement here different than making investors whole? Aren't those two different theories of recovery? Right. For sure. And the investors aren't parties to this case. This is the commission, and the commission has two remedies. Disgorgement, which we submit as equitable disgorgement, which was not reached in Camargo, or penalties. And so whether or not the investors get whole is not a subject of this case. The commission is limited in its remedies to equitable disgorgement or penalties. And so the investors, you don't know this, it's not in the record and it's not part of the appeal, but I think it's interesting, are pursuing all of their losses from the prime broker in separate litigation. The investors are not suing my clients or Mediatrix. So as far as jurisdiction, I understand where this court is coming from, but I would ask you to look at the fact of, is it fair to the youngs when the order that was appealed previously was denied without prejudice, and when there has never been a merits decision from this court or from the court below applying lieu? And I think we are entitled. What does lieu have to, I mean, lieu is dealing with disgorgement liability, and it's not dealing with a preliminary injunction, which, by the way, your clients consented to, preserving assets for the benefits of the victims. What lieu has to do with it is in determining, for courts to determine an amount of a prejudgment asset freeze in a commission case. They need to look at what the commission can recover post-judgment. Well, actually, on remand in lieu, didn't they reject that theory and didn't require a hearing? They didn't require a hearing in the Ninth Circuit, and we do not believe that, and that was post-judgment, by the way. By the time it was remanded, they didn't have a post-judgment hearing right away in response to lieu. But there has to be a rule-of-law principled basis for setting a prejudgment asset freeze, and it can't be anything other than the amount that the commission can recover in disgorgement post-judgment under the way the NDAA is framed. Now, you're correct that lieu did not deal with, it wasn't a prejudgment asset freeze case. The issue in lieu was, what does disgorgement mean, and can the commission pursue it? And the answer was, the commission can pursue it, and it means net gains. What we have here is a prejudgment asset freeze of $250 million when gross gains are $35 million and no evidence as to what net gains are. And we believe that this court does have jurisdiction under 1292A1 and the distinguishing features from the cases cited by the commission. Thank you. Thank you, counsel. I have 20 seconds in case something really crucial. You can use it if you want.  May it please the court, Morgan Brady-Lyons for the commission. The Young's attempt to appeal this decision under 1292A1 should be dismissed for lack of jurisdiction. Courts generally require that successive appeals from denials of motions to modify injunctions, as you were explaining, Judge McHugh, should be separated by change in circumstances or the law. Here, there is no such change, even if lieu somehow did. Although you would concede the statute doesn't say anything about changed circumstances, does it? Yes, Your Honor, I would concede that. That's correct. I'm speaking about the cases that sort of impose this gloss of a change in circumstances. And we don't have an on-point case that sets that in the Tenth Circuit, do we? I'm not aware of one, Your Honor. It does seem that without that requirement for change in circumstances or the law, the language of the statute could apply for really duplicative successive appeals. And so it seems to make sense to require that there be some change in fact or law that sort of has a nexus to the issue on appeal. I did also want to follow up, Judge Matheson, on your site to Harris, which I read very recently. It does have a really interesting discussion of the law of the case doctrine and how the law of the case doctrine and waiver doctrine sort of relate to each other. The Tenth Circuit in Harris explained that the law of the case requirement that an issue be decided on appeal is qualified by the waiver doctrine, which holds that an issue that could have been but was not raised on a previous appeal is forfeited and may not be revisited by the district court. So I think it's very applicable to this case. Although there wasn't the panel applying Kansas law of the case. They talk about sort of the general law of the case doctrine at first. They did apply Kansas law of the case, Your Honor. And sort of factually, it's not that similar to our case, but there's sort of a lengthy discussion of how the law of the case doctrine, not just in Kansas works, that I thought was very interesting and very interesting here on how waiver. If we decide we don't have jurisdiction, we wouldn't even reach law of the case, would we? I don't think so, Your Honor. I think this case could be dismissed for lack of appellate jurisdiction, and that would be the end. Although the district court decided the motion, the latest motion based on law of the case, would we have jurisdiction limited just to that part of the district court's decision, whether got it right or wrong? I'm not sure that would be necessary, Your Honor. I think this court could do, because there isn't sort of the Tenth Circuit case on point directly here. It has a lot of discretion to decide it on any grounds that it wishes to. But I'm not sure that the district court deciding on law of the case doctrine would qualify as a kind of change in circumstances or law that would justify an additional successive appeal. I think the asset freeze does provide that the Youngs are entitled to go back to the district court and move to modify the asset freeze, and the commission is entitled to oppose that motion. But, I mean, just as a general matter, setting aside the law of the case permutation, a party can go back and ask the court to modify its injunction as often as it can get away with it, right? Of course, Your Honor. The 1292A1 only applies to this court's jurisdiction over the district court. Certainly the parties, as circumstances change with a preliminary injunction, can go back and forth as necessary to the district court. I think the commission filed a 28J in this matter. Is that correct? Yes, Your Honor. And I'm a little puzzled by it, because it seems to be focused on the standard for granting a preliminary injunction, which seems irrelevant to us here because we have a stipulation to the preliminary injunction. What am I missing? Nothing, Your Honor. This actually was filed out of an abundance of caution and sort of reflects more of a commission policy than a concern about this particular case. We did want to make sure the court was aware of Starbucks and Chappelle in terms of extending Starbucks to commission injunctions here, but we don't think that that really controls in this case at all. It was under an abundance of caution approach. Okay, because we've got a stipulated injunction and the question is modification. Yes, Your Honor. That's correct. They cite to the Fifth Circuit case, and you have a prejudgment asset freeze. The targets of your investigation don't have the financial resources to mount an effective defense, although they're not presumed innocent like in the criminal context. The commission still has to make a showing, did make a showing in getting its initial freeze order, but doesn't that need to be balanced with the defendant's right to mount a reasonable defense and did the district court just kind of blow by that? Well, they're tainted assets that should go to victims and then, you know, there we are. And at some point, maybe because of discovery or other factors, maybe parties like the Young can show, well, we're situated differently than, you know, the primary bad guys, however you want to characterize it. But the district court never really did a compare and contrast or grapple with the difference in evidence of liability. And if you read the Fifth Circuit case, it's like, you know, it's an equitable balancing. Did that really happen here? I think, Your Honor, the district court has had this case for a while, but we are still in very early stages of this case because of the parallel criminal proceedings. So there really hasn't been much development in terms of liability. The district court certainly would have the discretion as the case progresses to determine that assets should be released if the Youngs were to show to the district court that they were situated differently and it were necessary. What this court said in the previous appeal is sort of a question of whether to unfreeze assets is trusted to the discretion of the district court. And I think the district court here weighed various factors, and the case, as the Youngs point to... Is our standard of review an abuse of discretion? But we do know they're a little different because of what they pled guilty to, right, or he pled guilty to. And Mrs. Young hasn't pled guilty to anything or been indicted for anything. No, Mrs. Young is here as a relief defendant, Your Honor, for sure. And in the criminal case, yes, Mr. Young pled guilty to lying to the commission and the other defendants were charged much more extensively with the fraud. Well, so, I mean, in terms of balancing, there is a difference that we know already. That may be correct, Your Honor. I think some of that hasn't come out in the district court yet, but the district court can look at what happens in the criminal case. And that may be something the court does take into effect when future requests are made. Here, I think the district courts have found reasonably that the interest of the investors in having their funds returned to them still out was the stronger force motivating their decision. And the Youngs here have not pointed to any assets that don't come from the Mediatrix fraud that they asked to use for counsel. But the freeze has been modified during the case. The defendants were allowed to seek employment and to use money from their employment for living expenses and counsel fees. And as they've identified assets that were not tainted by the fraud or don't come from Mediatrix, the commission generally agreed to the release of those assets as the case has gone on. Ms. Ashmore challenged the basis for the district court's finding of, I guess it's the $8 million figure six in my mind, but she claims there's really no evidence for the courts to make that determination. What's your rebuttal for that? I think, Your Honor, what's happened so far in this case is we are still at a preliminary phase. We're only talking about the asset freeze. So there has been no finding as to disgorgement against Mr. Young, a division of disgorgement between Mr. Young and the other defendants. So what the district court really looked at was the total number of frozen assets and the likely ultimate disgorgement award in this case. There really hasn't been any kind of extensive record about dividing up the amounts or setting disgorgement. And certainly where we are in this case procedurally, the district court should have latitude to set an asset freeze. How long has the case been filed? 2019, Your Honor. There's been no depositions, document discovery? There were numerous delays in the criminal case against Mr. Stewart and Sewell. Is the civil case on hold because of the criminal case? It was stayed as Mr. Stewart and Sewell and really sort of effectively was stayed generally because it has not proceeded. While that happens, they have now been convicted and should be sentenced soon. So we hope things will begin moving quickly. But, you know, Mr. Young's case has been really held hostage to those other proceedings, which really exacerbates the problem that they have in trying to defend themselves in a different context versus the other defendants. Versus the, you know, the primary targets of your investigation. We understand, Your Honor. And yes, the district court sort of has the discretion to take all of that into account and make modifications to the freeze as necessary. As does the commission, right? You have some discretion on it. We could seek relief in the district court. We could agree. Of funds if you if you wanted to. That's true, Your Honor. If the Young's could get past the jurisdiction and a lot of the case arguments and we get to merits here, shouldn't the court consider in terms of whether there should be some modification of the order? Whether the movement seeking to unfreeze assets is doing so to pay attorney fees? Should that be part of the standard in making that decision? I think that the Young's could not point to a case in the 10th Circuit that imposed that standard on the district court. Certainly the district court has broad discretion and that may be one of the factors the court would consider. But I think the Young's have not pointed to a case that would say the court, under these circumstances here, would abuse its discretion in not deciding to release those funds. So they haven't pointed to a 10th Circuit case? The cases they have pointed to, Your Honor, we think are generally distinguishable. How do other courts deal with that question? Is that something that they're required to consider? I'm not aware of cases laying out the factors a district court must consider. Certainly there are decisions where courts have considered the availability of counsel. And here, I think the fact that the Young's are represented has been taken into account by the district court currently represented. But it may be something that a district court in its discretion. That is something a district court could consider, Your Honor, but again, does not necessarily outweigh all the other factors that would be. I had a question about Mrs. Young's status as a relief defendant. In the first appeal, one of the arguments was that the motion done free should be granted because of the status as a relief defendant. And the decision didn't explicitly say that issue was waived. Was it waived? I believe that it was, Your Honor. I think my reading of the decision was really that the Young's had sort of failed to preserve any of their issues on appeal, and that only the Stewart's and Sewell's issues as to release a fees for counsel and a hearing were preserved. And I think the court only remanded on the question of whether the district court should hold a hearing in the first instance. So my understanding is all of those issues were in fact waived by the first decision in this court. If there are no other questions, that's fair. Thank you. Counsel, you're excused. Could you give Ms. Ashmore one minute? I'm not going to take much time. If you decide this on the basis of jurisdiction, so be it. But I do think it's important to note that if there was not binding ten circuit precedent limiting 1292A1 in the manner that you're imposing right now, and given that since the NDAA was passed, the Young's have shown an intent to have the court apply the limits on disgorgement set forth in lieu and not challenged in the NDAA. And certainly, I don't think it's fair to say that they've forfeited their rights to have these issues heard when forfeiture comes about through neglect. And if anything, you're complaining they haven't neglected. And so this is not a case where the rights should be forfeited, given the clear state of lieu and the NDAA and no basis for a pre-judgment asset freeze eight times in excess of the potential maximum post-judgment remedy. Thank you. Counsel, you're excused. The case is submitted. Thank you.